UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARTHUR HIGA AND ISABELL HIGA, | § § § § | |
| Plaintiffs, | | |
| | § | |
| v. | § § | CIVIL ACTION NO. 5:22-cv-01100-FB-ESC |
| ATLANTIC CASUALTY INSURANCE COMPANY, | § § § § | |
| Defendant. | | |

**DEFENDANT ATLANTIC CASUALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' ORIGINAL PETITION**

TO THE HONORABLE JUDGE FRED BIERY:

Atlantic Casualty Insurance Company (Atlantic Casualty) files its Answer to the Original Petition of Plaintiffs, Arthur Higa and Isabell Higa, and in support respectfully shows the Court the following:

**I.**
**ATLANTIC CASUALTY'S ANSWER**

For each paragraph below, Atlantic Casualty restates Plaintiffs' allegations and responds accordingly.

**I.      Discovery Control Plan Level**

1.     "Plaintiffs intend for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.  This case involves complex issues and will require extensive discovery.  Therefore, Plaintiffs ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit."

*Answer: This paragraph does not apply in federal court and requires no further response.*

## II.    Parties & Service

2.     "Plaintiffs are the named insured under a policy issued by the Defendant, Atlantic Casualty insurance Company.  Plaintiffs have a place of business, and the insured building is located in Bexar County, Texas."

*Answer: Admitted.*

3.     "Atlantic Casualty Insurance Company is an insurance company that engages in the business of insurance in Texas.  The insurance business done by Atlantic Casualty Insurance Company in Texas includes, but is not limited to, the following: taking and receiving applications for insurance; receiving and collecting premiums; adjusting claims and sometimes paying claims, and issuing insurance policies to consumers of this state, including Plaintiffs.  Atlantic Casualty Insurance Company may be served through its registered agent, Angela B. Grady, Vice President Claims, Atlantic Casualty Insurance Company, 400 Commerce Court, Goldsboro, NC 27534, or wherever else it may be found."

*Answer:  Atlantic Casualty admits the service information is stated correctly. Atlantic Casualty admits that it is a surplus lines insurer that issued Policy Number M076001262-0 to Arthur & Isabell Higa, that Atlantic Casualty has a managing general agent in Texas, that the Higas utilized a retail insurance agent, and therefore denies the remainder of the allegations.*

## III.    Jurisdiction & Venue

4.     "This is a civil matter in which the amount in controversy is more than five hundred dollars ($500.00), exclusive of interest.  Jurisdiction is thus proper in Bexar County, Texas, and it is also proper pursuant to Art. V, Sec. 8 of the Texas Constitution."

*Answer:  Jurisdiction and venue are admitted in this court.*

5.    "Venue is appropriate in Bexar County, Texas because all or part of the conduct giving rise to the causes of action were committed in Bexar County, Texas, and the property in which is the subject of this suit is located in Bexar County, Texas.  Accordingly, venue is proper pursuant to the Texas Civil Practices & Remedies Code § 15.002."

Answer: Atlantic Casualty admits that venue is proper in this court because the case was properly and timely removed from a district court in Bexar County, Texas.

## IV.    Facts

6.    "The policy was first issued with an effective date of March 1, 2020, continuing until March 1, 2021, and it was renewed thereafter.  The policy provides coverage for direct physical loss caused by hail to the building and personal property located at 1017 Donaldson, San Antonio, Texas 78228."

Answer:  Atlantic Casualty admits the policy dates. The remainder of the allegations in paragraph 6 are denied because the policy terms, conditions and exclusions speak for themselves.

7.    "In (sic) May 27, 2020, a hail and windstorm occurred at the Plaintiffs' property. Shortly after the storm, a claim was made to Defendant for exterior hail damage, interior damage and damage to contents.  In fact, Defendant has agreed to this.  Unfortunately, in an attempt to save money, they have failed to fully and property pay this loss.  They agreed that substantial damage occurred to the roof, but they refused to pay for any interior damage or contents damages thereafter.  In total, over $70,000 in damages occurred at this property.  Defendant has thus far refused to cover all of it."

Answer:  Atlantic Casualty admits a claim was made for damage to the property and contents. Atlantic Casualty admits that the independent adjuster found hail damage, but no wind damage, and initially found no covered storm created water entry from the roof (but a

*low spot). Atlantic Casualty admits that it and Plaintiffs dispute the amount and scope of covered damages. The remainder of the allegations are denied.*

8.    "In an email exchange between representatives of the Plaintiffs and Defendant, the Plaintiffs' representative made it clear that despite a storm created opening on the roof, the carrier was improperly refusing to pay this claim.  He stated the following:"

```
12/3/2020--Good afternoon Blake,

I wanted to follow up on the statis of getting the certified policy.  Additionally, your
email mentions that coverage is being denied due to no storm "created opening", the
insured stated the roof did not leak prior to the storm, it is obviously leaking
now.  Coverage has afforded due to hail; the hail displaced the granule protecting the
bitumen matt which in itself would be considered an "opening" in the granule
surface.  Please explain how you determined there was no opening.  What steps did
you take to determine an opening did not exist or that it was not created by the
storm?  Was there an engineer's inspection and/or report?  Under the policy, please
show where it states how big the opening has to be. Can there be an opening so
small that it is not visible to the naked eye, but still be covered under the policy?
```

*Answer:   Atlantic Casualty admits Plaintiffs' representative and Mr. Williams exchanged email regarding the claim. The remainder of the allegations are denied.*

9.    "It is clear to see that Defendant refused to properly follow the applicable Policy language as they should have.  They did this to protect their monetary interests to the detriment of the Plaintiffs.  They did intentionally and in bad faith.  It was clear, open and obvious damage they should have covered but they unfortunately decided to hide behind an illicit interpretation of the Policy's language.  They should have paid for the totality of this damage but have thus far failed to do so."

*Answer: These allegations are denied.*

## V.    Causes of Action

1.    "All conditions precedent to this action have occurred, been fulfilled, or have otherwise been waived or discharged."

*Answer: These allegations are denied.*

## A. Breach Of Contract Against Defendant

2.   "Defendant's conduct constitutes a breach of the insurance contract between it and Plaintiffs.  It is undisputed that a contract existed between Plaintiffs and Defendant in the form of the Policies.  It is also undisputed that Plaintiffs paid premiums, substantially complied with all terms of the Policies, and held up their end of the bargain.  Defendant on the other hand did not hold up its end of the bargain."

*Answer:  Atlantic Casualty admits the insurance policy is a contract for which premium was charged. The remainder of the allegations are denied.*

3.   "The Policies obligate Defendant to pay for all covered losses.  When a claim was presented, Defendant failed to provide coverage thereby breaching the Policy agreements."

*Answer:  Atlantic Casualty admits the policy terms and coverage speak for themselves. The remainder of the allegations are denied.*

4.   "Plaintiffs sustained damages as a result of Defendant's breach of the Policy.  Such losses were the natural, probably, and foreseeable consequence of the Defendant's conduct.  Plaintiffs seek their damages together with pre-judgment interest and reasonable and necessary attorneys' fees."

*Answer:  Atlantic Casualty admits plaintiffs seek damages/interest but denies entitlement to same and denies the other allegations.*

## B. Noncompliance With The Texas Insurance Code

5.   "As described above, Defendant's conduct and the conduct of their agents constitutes multiple violations of the Texas Insurance Code that have been legislatively determined to be Unfair Method of Competition, an Unfair Settlement Practice, and/or

otherwise in violation of the Texas Insurance Code.  Section 541.151 and Section 542.060 of the Texas Insurance Code makes these violations actionable."

   *Answer: These allegations are denied.*

6. "Due to the relationship (and/or their engagement in the business of insurance) between Plaintiffs, Defendant, and their agents (who makes Defendant's liable on a respondeat superior and agency theory) there are numerous obligations owed to Plaintiffs under the Texas Insurance Code.  Chief among these duties, these persons were obligated to (in whole or in part):

   To not misrepresent material facts relating to coverage at issue (§541.060(a)(1) & §542.003(b)(1) with the inclusion of knowingly);

   To attempt in good faith to effectuate a prompt, fair, and equitable settlement a claim in which the insurer's liability has become reasonably clear (§541.060(a)(2) & §542.003(b)(4));

   To promptly provide a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim (§541.060(a)(3));

   To affirm or deny coverage within a reasonable amount of time (§541.060(a)(4));

   To not refuse to pay a claim without conducting a reasonable investigation with respect to the claim (§541.060(a)(7));

   To not make an untrue statement of material facts (§541.061(1));

   To make payment within twentieth (sic) business days once the insurer notifies the claimant it will pay a claim (§542.057(c));

   To not delay payment of a claim after receiving all items, statements, and forms reasonably requested and required under Section 542.055 for a period of more than 60 days (§542.058(a))."

*Answer:  Atlantic Casualty admits the insurance code and the policy at issue speak for themselves. Atlantic Casualty denies any other allegations.*

40.   [1]"The Defendant failed to fulfill these duties.  Briefly speaking, and as supported above, a written claim was undoubtedly made under the policy.  Defendant was and continues to be liable for that claim, Defendant should have provided coverage for the claim.  Defendant instead wrongfully withheld policy benefits and along the way violated the Texas Insurance Code as this petition describes, and that has caused and resulted in actual damages to Plaintiffs.  Defendant's wrongful withholding of policy benefits was made possible by the actions and inactions of its agents, all of which were in violation of the Texas Insurance Code."

*Answer:  Atlantic Casualty denies these allegations.*

41.   "Plaintiffs seek to recover actual damages, and the applicable interest under the Texas Insurance Code, together with reasonable and necessary attorney's fees.  Plaintiffs also seek pre-judgment interest."

*Answer:  Atlantic Casualty denies these damages, interest or fees are owed.*

**C.  Breach Of The Duty Of Good Faith And Fair Dealing**

42.   "Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing it owes to the Plaintiffs."

*Answer: These allegations are denied.*

43.   "In the insurance context, a special relationship arises because the parties' unequal bargaining power and the nature of insurance contracts, which would allow unscrupulous insurers to take advantage of their Plaintiffs' misfortunes in bargaining for settlement or resolution of claims.  An insurance company has exclusive control over the evaluation, processing, and denial of claims, and without this duty insurers could arbitrarily

---

[1] Paragraph 40 should be Paragraph 7 in Plaintiffs' Original Petition but the paragraphs are off-numbered.

deny coverage and delay payment of a claim with no more penalty than insurer on the amount owed."

*Answer:  Atlantic Casualty denies these allegations or legal conclusions.*

44.   "For these reasons, a duty exists.  Plaintiffs contend Defendant breached its duty of good faith and fair dealing:

      a.   Because there was no reasonable basis for Defendant to deny the claim;

      b.   Because there was no reasonable basis for Defendant to delay the claim;

      c.   Because Defendant failed to determine whether there was any reasonable basis to deny and delay the claim;

      d.   Because Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim even though its liability was reasonably clear; and

      e.   Because Defendant refused to pay a claim without conducting a reasonable investigation of the claim."

*Answer:  Atlantic Casualty denies these allegations.*

45.   "Defendant's failure, as described above, to adequately and reasonably investigate and evaluation Plaintiffs' claim, although, at that time, it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing."

*Answer: Atlantic Casualty denies these allegations.*

46.   "Defendant's breach of the duty of good faith and fair dealing has proximately caused damages for the Plaintiffs."

*Answer: Atlantic Casualty denies these allegations.*

## VI.    Knowledge

47.    "The Defendant did each of the acts described above, "knowingly" as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiffs' damages described herein."

*Answer: Atlantic Casualty denies these allegations.*

## VII.    Damages

48.    "Plaintiffs intend to show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiffs.  Plaintiffs contend the damages were the natural, probably, and foreseeable consequence of Defendant's breach of the policy.  Plaintiffs contend that Defendant's violations of the duty of good faith and fair dealing were the proximate cause of the damages.  Lastly, Plaintiffs also contend Defendant's actions and its agents' actions in violation of the Texas Insurance Code were the producing causes of its damages.  These damages are a direct result of the mishandling of Plaintiffs' claim in violation of the laws set forth above."

*Answer: Atlantic Casualty denies these allegations.*

49.    "For breach of contract, Plaintiffs are entitled to regain the benefit of the bargain, which is the amount of the claim, together with reasonable and necessary attorneys' fees. In the alternative, Plaintiffs are entitled to their pecuniary loss."

*Answer: Atlantic Casualty denies these allegations.*

50.    "For noncompliance with the Texas Insurance Code, Plaintiffs are entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, or could be the benefits as actual damages under the Texas Insurance Code due to Defendant's statutory violation that caused Plaintiffs to lose its (sic) contractual rights to benefits.  In any event, the damages should at least be Plaintiffs' pecuniary loss

and all court costs, and reasonable and necessary attorneys' fees.  For knowing conduct of the acts described above, Plaintiffs seek three times the actual damages.  Tex. Ins. Code §541.152."

*Answer: Atlantic Casualty denies these allegations.*

51.   "For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of its (sic) claim, as well as the applicable interest per annum on the amount of such claim as damages, together with reasonable and necessary attorneys' fees.  Tex. Ins. Code §542.060."

*Answer: Atlantic Casualty denies these allegations.*

52.   "For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to exemplary damages.  Defendant has actual awareness of its liability under the policy, but is choosing to ignore that liability, deny the claim, and delay the claim.  This warrants the imposition of exemplary damages."

*Answer:  Atlantic Casualty denied these allegations.*

53.   "For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading.  Proper notice of the claim has been sent to the relevant parties.  Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the appropriate appellate bodies."

*Answer:  Atlantic Casualty denies these allegations.*

## VII.[2]

54.   "As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiffs states (sic) that the damages sought are in an amount within the jurisdictional limits of this Court.  As

---

[2] Sic.

required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiffs seek monetary relief over $200,000 but no more than $1,000,000.00.  A jury, however, will ultimately determine the amount of monetary relief actually awarded.  Plaintiffs also seek pre-judgment and post-judgment interest at the highest legal rate."

*Answer:  This paragraph does not require admission or denial, to the extent it does, Atlantic Casualty denied that Plaintiffs are entitled to the damages or interest or fees sought.*

### Prayer

"WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Defendant be cited to appear and answer herein; that, on final hearing, Plaintiffs has (sic) judgment against Defendant for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court; for costs of suit; for interest on the judgment as allowed by the applicable statute; for pre-judgment interest; and, for such other and further relief, in law or in equity, either general or special against Defendant, to which Plaintiffs may be justly entitled."

*Answer: Atlantic Casualty denies that Plaintiffs are entitled to the relief requested in this paragraph.*

*Any allegation that has not been admitted, denied, or explained in Atlantic Casualty's preceding answers is hereby denied.*

## II.
## ATLANTIC CASUALTY'S AFFIRMATIVE DEFENSES

In addition to its answers above, Atlantic Casualty asserts the following affirmative defenses. Atlantic Casualty reserves the right to plead additional affirmative defenses as may be warranted. Any defense asserted below is pleaded in the alternative under the law, as necessary or appropriate. Under Federal Rule of Civil Procedure 10(c), Atlantic Casualty

adopts by reference and fully incorporates for all purposes all coverage defenses asserted in its pleadings or motions.

1.  Atlantic Casualty issued insurance policy no. M07600122-0, effective March 1, 2020 to March 1, 2021, to Arthur & Isabell Higa (Policy).  Atlantic Casualty avers that the best evidence of the terms of the Policy are contained in the Policy and denies any allegations which may tend to enlarge, contradict or contravene the terms, conditions, exclusions, limitations of liability, as to the amount or otherwise, as therein provided. Atlantic Casualty specifically pleads the terms, conditions, provisions, exclusions, and limitations of the Policy as if copied herein in full and place Plaintiffs on full proof of any allegations seeking to infer liability by virtue of the existence of said Policy of insurance.

2.  *Payment*: Atlantic Casualty pleads **payment** of all covered claims.

3.  *Repairs*: Atlantic Casualty pleads actual cash value is owed until repair proof has been provided, per the terms of the policy, prior to recovery of replacement cost coverage. Therefore, Atlantic Casualty pleads failure to satisfy conditions for additional sums.

4.  *Failure to Provide Signed Proof of Loss*: This suit is subject to dismissal because the proof of loss was not provided as requested. Therefore, Atlantic Casualty pleads failure to satisfy the conditions and terms of the policy regarding proof or proofs of loss.

5.  *Damages occurred before effective date of Policy.* Any prior or pre-existing damage is not covered because it commenced before the Policy went into effect on March 1, 2020:

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Condition and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

…

H.  POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1.  We cover loss or damage commencing:

a.  During the policy period shown in the Declarations and

b.  Within the coverage territory.

2.  The coverage territory is:

a.  The United States of America (including its territories and possessions);

b.  Puerto Rico; and

c.  Canada.

CP 00 90 07 88

6.    *No independent injury*. Because Plaintiffs' allegations are generally based upon Atlantic Casualty's alleged failure to pay policy benefits and Plaintiffs have made no showing of an independent injury, the absence of liability for Plaintiffs' alleged underlying insurance claim precludes Plaintiffs' extra-contractual claims against Atlantic Casualty arising out of those allegations.

7.    *Lack of coverage precludes extra-contractual liability*.  The existence of coverage for the underlying insurance claim is mandatory to establish the basis of Plaintiffs' claims for alleged statutory violations.  Plaintiffs have failed to establish coverage under the Policy for the loss and any additional amounts sought in this suit.

8.    *Any direct physical loss is excluded*. Plaintiffs' reported damage did not result from a covered cause of loss:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**A.  Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

.        .        .

**CP 00 10 10-12**

.        .        .

### CAUSES OF LOSS – SPECIAL FORM

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequent to the loss.

**a. Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

(1) Regulating the construction, use or repair of any property; or

(2) Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

(a) An ordinance or law that is enforced even if the property has not been damaged; or

(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demotion of property, or removal of its debris, following a physical loss to that property….

.     .     .

**g. Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus," Wet Rot, Dry Rot and Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.

But if "fungus," wet or dry rot or bacteria result in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

This exclusion does not apply:

(1) When "fungus," wet or dry rot or bacteria result from fire or lightning; or

(2) To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus," Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in widespread damage or affects a substantial area.

2.  We will not pay for loss or damage caused by or resulting from any of the following:

.       .       .

d.  (1) Wear and tear;

(2) Rust of other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

.       .       .

(4) Settling, cracking, shrinking or expansion;

…

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force…

(7) The following causes of loss to personal property; (a) Dampness or dryness of atmosphere; (b) Changes in or extremes of temperature; or (c) Marring or scratching.

.       .       .

But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

.       .       .

f.  Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

.       .       .

m.  Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

 a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

.  .  .

 c. Faulty, inadequate or defective:

  (1) Planning, zoning, development, surveying, siting;

  (2) Design, specifications, workmanship, repair, construction, renovation, re-modeling, grading, compaction;

  (3) Materials used in repair, construction, renovation or remodeling; or

  (4) Maintenance;

  of part or all of any property on or off the described premises.

.  .  .

C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

.  .  .

 c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

  (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

  (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

CP 10 30 10 12

.  .  .

**MOLD, FUNGUS, BACTERIA OR ORGANIC**

**PATHOGEN EXCLUSION – PROPERTY**

This endorsement modifies insurance provided under the following:

 Building and Personal Property Coverage Form

 Causes of Loss – Basic Form

 Causes of Loss – Broad Form

Causes of Loss – Special Form

The following sections of your policy(ies) are deleted:

On the CP 00 10, A. Coverage, 4. Additional Coverages, d. Pollutant Clean-up Removal;

On the CP 1010, C. Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria;

On the CP 1020, D. Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria; and

On the CP 1030, E. Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria;

We will not pay for loss or damage:

1.  to direct physical loss of or damage to Covered Property;

2.  to your expenses to remove debris of Covered Property;

3.  to any actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration";

4.  to any extra expense you incur during the "period of restoration";

5.  to damages for the devaluations of property or for the taking, use or acquisition of interference with the rights of others in property or air space;

6.  to any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogen"; or

7.  to any litigation or administration procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence, or in any sequence out of actual, alleged or threatened existence, discharge, dispersal, release or escape of "organic pathogen", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, "fungus", bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, or biogenic aerosol.

CPMOLD 12 14

9.  *Deductible exceeds damage.* In the event that the reported additional, unpaid alleged damage to the Property was caused by a Covered Cause of Loss during the Policy period, there is still no coverage because the damage does not exceed Plaintiffs' deductible:

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE FORM

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

CONDOMINIUM ASSOCIATION COVERAGE FORM CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM STANDARD PROPERTY POLICY

TOBACCO SALES WAREHOUSES COVERAGE FORM

SCHEDULE

| Premises Number | Building Number | Windstorm Or Hail Deductible Percentage – Enter 1 %, 2%, 3% or 5% and $1,000, $2,500 or $5,000 Minimum |
|---|---|---|
| 1 | 1 | **2 %** Subject to **$2,500 Minimum** |
| | | % Subject to $ Minimum |
| | | % Subject to $ Minimum |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

The Windstorm or Hail Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by Windstorm or Hail. This Deductible applies to each occurrence of Windstorm or Hail.

Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy. If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.

As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) Of Insurance are shown in the Declarations.

## WINDSTORM OR HAIL DEDUCTIBLE CALCULATIONS

A.  Calculation Of The Deductible - All Policies

　　1.  A Deductible is calculated separately for, and applies separately to:

　　　　a.  Each building that sustains loss or damage;

b.  The personal property at each building at which there is loss or damage to personal property;

and

c.  Personal property in the open.

If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property.

2.  We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition; Agreed Value Optional Coverage; or any provision in a Value Reporting Form relating to full reporting or failure to submit reports.

CPACI 03 21 02 17

10.  *No assignment of benefits.* The Policy does not permit and voids any assignment of benefits by Plaintiffs:

**ASSIGNMENT OF BENEFITS EXCLUSION**

No benefits under this policy may be assigned or otherwise transferred, regardless of whether made before loss or after loss, and any such assignment or transfer is void.

No causes of action arising from or based on this policy may be assigned, and any such assignment is void.

ACI-AOBE 12-17

11.  *No allocation.* Alternatively, Plaintiffs bear the burden to allocate between covered and noncovered damages but have failed to do so. Additionally, Plaintiffs cannot allocate between covered and noncovered damages. Alternatively, Plaintiffs have not satisfied conditions precedent as a result of its failure and/or inability to allocate between covered and noncovered damages.

12.   *Bona fide dispute.* Atlantic Casualty pleads that there is a bona fide dispute regarding liability on the contract and, therefore, there are no common-law or statutory bad-faith claims.

13.   The Policy is written on an RCV (replacement cost value) basis subject to certain conditions being met. The Policy contains a co-insurance provision.

14. The Policy states:

> **D. LEGAL ACTION AGAINST US**
>
> No one may bring a legal action against us under this Coverage Part unless:
>
> 1.  There has been full compliance with all of the terms of this Coverage Part; and
> 2.  The action is brought within 2 years after the date on which the direct physical loss or damage occurred.
>
> CP 00 90 07 88

15.   *Non-transference.* The Policy states that: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured."

16.   *Concurrent causation.* Plaintiffs bear the burden of proof to segregate damages and cannot segregate damages. Atlantic Casualty pleads the doctrine of concurrent causation. Plaintiffs have not and cannot meet their burden of segregating harm resulting from concurrent causes. Plaintiffs fail and failed to allocate between covered and excluded perils. Failure to segregate is fatal to recovery.

17.   *Loss in progress and fortuity doctrines limit coverage.* Any losses or damages occurring or commencing to occur prior to the inception of the Policy are excluded from coverage, as a matter of law, pursuant to the insurance doctrines of Loss In Progress and Fortuity. No coverage is owed because this damage was a known loss.

18.    Plaintiffs' breach of contract claims are barred, in whole or in part, by the language of the Policy, including the terms, definitions, conditions, exclusions, endorsements, retentions, limits, and sub-limits contained within the Policy.

19.    Plaintiffs cannot recover under a breach of contract claim because they cannot show that Atlantic Casualty breached any contract.

20.    Plaintiffs cannot recover attorneys' fees under Chapter 38 of the Civil Practice and Remedies Code because they cannot prove that Atlantic Casualty breached the parties' contract.

21.    *Credit/offset.* Even if coverage is found, which is denied, Plaintiffs' recovery is limited to any amounts for which it is responsible and Atlantic Casualty is entitled to a credit/offset for all amounts already paid by any party or entity to Plaintiffs for the damages that are the subject of this lawsuit.

22.    *No damages sustained.*  Atlantic Casualty neither had nor breached a contractual duty or obligation to Plaintiffs under the Policy, but even if it did, which is denied, any such breach did not proximately, legally, or foreseeably cause Plaintiffs to sustain any damages.

23.    *Accord and satisfaction.* Atlantic Casualty would assert in the event it is found liable to Plaintiffs, any such liability being expressly denied, the affirmative defenses of accord and satisfaction, release payment, credit, offset, res judicata, collateral estoppel, statute of limitations, waiver, and laches.

24.    *Lack of insurable interest.* To the extent Plaintiffs either did not own the insured property or had no insurable interest in the insured property at the time of the claimed loss, there is no right to compensation regardless of the cause of loss.

25.    *Statutory deadlines.* The statutory deadlines of Texas Insurance Code Chapter 542 do not apply after litigation was filed.

26. *Failure to mitigate.* Plaintiffs failed to mitigate their damages. Any alleged delays were caused by others, such as the public adjuster not providing the requested information timely (proof of loss form information).

27. Atlantic Casualty reserves the right to assert other defenses as additional facts are revealed during discovery.

## III.
## CONCLUSION & PRAYER FOR RELIEF

For these reasons, Atlantic Casualty respectfully requests that the Court dismiss Plaintiffs' claims against Atlantic Casualty with prejudice. And because one or more Policy terms, defenses, payments, exclusions or endorsements bar coverage for the claims asserted by Plaintiffs, Atlantic Casualty prays that the Court (1) declare that no coverage obligation is owed by Atlantic Casualty for the claims asserted by Plaintiffs; (2) award Atlantic Casualty its court costs; and (3) award Atlantic Casualty all relief at law or in equity to which it may be entitled.

Respectfully submitted.

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, LLP

*Camille Johnson*

Camille Johnson
State Bar No. 10686600
4621 Ross Avenue, Suite 300
Dallas, Texas 75204
Tel: (214) 368-1515
Fax: (214) 292-9647
camille@ssjmlaw.com

Leah Stein
State Bar No. 24098467
The Overlook at Gaines Ranch
4330 Gaines Ranch Loop, Suite 150
Austin, Texas 78735
Phone: (512) 347-1604
Fax: (512) 347-1676
leah@ssjmlaw.com
**Counsel for Defendant Atlantic Casualty
Insurance Company**

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing on October 14, 2022 with the Clerk of Court via the Court's CM/ECF System, which will send notification to all counsel of record.

Benjamin R. Crowell III
ben@ck-firm.com
Brennan M. Kucera
Brennan@ck-firm.com
CROWELL & KUCERA, PLLC
2028 E. Ben White Blvd., Suite 240-2014
Austin, Texas 78741
**Counsel for Plaintiffs Arthur Higa and Isabell Higa**

_Camille Johnson_
Camille Johnson